UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAUENGA M HAKEEM, | Case No. 19-cv-02161-VC |
| Plaintiff, | |
| v. | **ORDER DECERTIFYING CLASS AS TO DRUG TEST CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT AS TO HAKEEM ON DRUG TEST CLAIMS** |
| TRANSDEV SERVICES, INC., et al., | |
| Defendants. | Re: Dkt. No. 67 |

This case has a somewhat strange history. Two classes were certified: (i) a class of Transdev employees who underwent mandatory drug testing required as a contingency of employment; and (ii) a class of Transdev employees who received blended paycheck stubs.[1] Transdev then moved for summary judgment only as to the claims relating to the drug test class. The evidence submitted in connection with the summary judgment motion cast doubt on whether the drug test claims were properly certified for class treatment. For the reasons discussed below, the drug test class is now decertified, and Transdev's motion for summary judgment as to Hakeem's drug test claims is granted on an individual basis.

1. Decertification of drug test class. The evidence presented at the class certification stage suggested that the experiences of proposed class members with respect to the initial drug tests they took as a contingency of employment were more or less the same, and that Hakeem's

---

[1] The class notice states that four classes were certified, but three of the four classes were defined identically as Transdev employees who underwent mandatory initial drug tests. In effect, there were thus two classes certified (the blended paycheck class and the drug test class) with the drug test class certified as to three claims: (i) failure to pay minimum wages, (ii) failure to provide accurate wage statements, and (iii) failure to timely pay final wages. When this ruling refers to the "drug test class," it refers to the class as it relates to all three claims.

experience was representative of these experiences. Indeed, Transdev did not identify differences between the circumstances of class members' initial drug tests. Transdev's primary argument against class certification was that the drug test claims lacked merit, which is not a reason to decline to certify a class. *See* Dkt. No. 34.

However, the evidence submitted in connection with Transdev's motion for summary judgment on the drug test claims suggests that the circumstances of different class members' initial drug tests differed in a way that could impact whether summary judgment is proper. For example, Hakeem asserts in her deposition that between signing her offer of employment and taking her initial drug test, she attended one orientation session with four or five other employees that lasted about two hours, during which a Transdev person provided some details about the job and explained how to obtain a commercial driver's license and where to go to get a drug test. Hakeem stated that she was paid for this orientation time. Another alleged member of the class, Aleasha Coleman, submitted a declaration asserting that between signing her offer letter and taking her initial drug test, she completed a weeklong safety orientation that lasted about 40 hours, and she spent two weeks doing about 40 hours of on-the-road training with a road supervisor. Coleman stated that she was not paid for any of this time.

The differences between the circumstances of these two class members' drug tests raised concerns that the certified drug test class did not satisfy Rule 23's requirements. *See Alvarez v. Office Depot, Inc.*, 2019 WL 2710750, at *7-8 (C.D. Cal. June 27, 2019). The Court raised this issue with the parties, and proposed the option of decertifying the drug test class and considering the summary judgment motion on the drug test claims as to Hakeem only. Neither side objected. The drug test class is thus decertified, and the drug test-related claims will proceed only with respect to Hakeem individually. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time.").

Counsel for the plaintiff is ordered to provide notice to class members that the drug test class has been decertified, and that if class members wish to pursue relief on the ground that they are entitled to payment for time spent taking their initial drug tests, they must do so on their own.

Transdev and class counsel must split the cost of the notice, and must confer about its contents. The parties must submit a proposed notice (or competing proposed notices) to the Court for review within 7 days of this order.[2]

2. <u>Summary judgment as to Hakeem's individual drug test claims</u>. With the drug test class decertified, the Court will adjudicate Transdev's motion for summary judgment as to Hakeem's drug test claims on an individual basis. Hakeem asserts that she is entitled to compensation for the time spent taking the initial drug test required for her employment with Transdev. Whether this time is compensable depends on whether Hakeem was acting as Transdev's "employee" when she took the test. *See, e.g.*, Cal. Labor Code § 1194(a). It is clear that the fact that Transdev labeled the drug test a "pre-employment" test and provided that Hakeem's employment was "contingent" on her passing the test does not itself establish that Hakeem was not acting as an employee. *See Johnson v. Winco Foods, LLC*, 2021 WL 71435, at *4 (C.D. Cal. Jan. 5, 2021); *Brum v. MarketSource, Inc.*, 2017 WL 4883376, at *2-3 (E.D. Cal. Oct. 27, 2017).

Beyond that, it is unclear exactly, under California law, how the Court should assess whether Hakeem was acting as an "employee" at the time of her drug test. The question does not squarely fit within the traditional employer-employee analytical framework. The California Supreme Court has laid out three tests to determine whether an employment relationship exists, but in the context of determining which of various entities could be considered joint employers. *See Martinez v. Combs*, 49 Cal.4th 35, 66 (2010). The three definitions of "employ" adopted by the California Supreme Court in this context include: (1) to control the wages, hours, or working conditions; (2) to suffer or permit to work; and (3) to engage, creating a common law employment relationship. *See id.* Although these definitions are obviously relevant to the question of whether Hakeem was acting as an employee when she went to take her drug test, the tests apply less straightforwardly in this context than in the context in which they were

---

[2] Transdev's evidentiary objections are denied.

developed. *See Gunawan v. Howroyd-Wright Employment Agency*, 997 F. Supp. 2d 1058, 1064 (C.D. Cal. 2014).

The California Division of Labor Standards Enforcement (DLSE) provides additional guidance that may factor into the analysis of whether Hakeem was acting as an employee. The DLSE Manual, for example, provides that determining whether a prospective employee is entitled to wages for time spent "trying out" for a job depends on (a) whether that time is for the purpose of testing skills or training the prospective employee, (b) whether there was productivity derived from the work performed during that time, and (c) the length of time spent in the try-out. *See* DLSE, The 2002 Update of the DLSE Enforcement Policies and Interpretations Manual (Revised) (August 2019), *available at*

*https://www.dir.ca.gov/dlse/dlsemanual/dlse_enfcmanual.pdf*. A 2010 DLSE Opinion Letter also lists six factors that should be considered to determine whether interns or trainees are "employees" under California law, and at least one court has applied these six factors to evaluate whether pre-employment training qualified as compensable time.[3] *See Moore v. C.R. England, Inc.*, 2011 WL 13189805, at *6-8 (C.D. Cal. Aug. 29, 2011).

Regardless of the precise contours of the test in a situation like this, the evidence as to Hakeem is not enough to create a genuine issue of fact as to whether she was acting as an employee at the time of her drug test. Transdev made Hakeem a written "Offer of Employment" that stated the offer was "contingent upon your successful completion of a pre-employment drug test," along with other contingencies like passing a background check and obtaining the necessary licensing. The offer further stated that should she "not pass any of these processes, even after employment has begun, the offer will be withdrawn." Hakeem checked the "I Accept"

---

[3] These factors include: (1) whether the training, even though it includes actual operation of the employer's facilities, is similar to that which would be given in a vocational school; (2) whether the training is for the benefit of the trainees; (3) whether the trainees displace regular employees or work under their close observation; (4) whether the employer derives immediate advantage from the trainees' activities, or whether the employer's operations are actually impeded; (5) whether the trainees are necessarily entitled to a job at the end of the training period; and (6) whether the employer and trainees understand that the trainees are not entitled to wages.

box printed at the bottom of the offer letter. The only interaction Hakeem had with Transdev between accepting this offer and taking her drug test was reporting to a Transdev office for a "little orientation class" with about four of five other individuals that lasted around two hours. During this "orientation," a Transdev human resources representative described some details of the job, gave Hakeem pamphlets and instructions on how to obtain a commercial driver's license, and instructed her to go and take the drug test. No reasonable jury could conclude that she was acting as an "employee" when she then went to take that test.

The fact that Transdev specified the time, date, place, and scope of the drug test, and did not allow Hakeem to use her personal doctor or bring in drug testing reports from other doctors, does not change this conclusion. Nor does the fact that Hakeem was informed that she had to take a second test when her first was "diluted," and that this second test occurred sometime after January 22, 2018, when her offer letter listed Hakeem's "expected start date" as January 22. There is nothing in the record to suggest that Hakeem actually started work on January 22, or attended additional trainings, or had any other interactions with Transdev representatives before taking this second drug test. Without more, Hakeem has failed to create a factual issue as to whether she was acting as Transdev's employee at the time of her drug tests, and her claims related to these tests fail. [4] *Cf. Johnson*, 2021 WL 71435, at \*3-5 (granting summary judgment against prospective employee on claim that they were entitled to compensation for pre-employment drug test); *Gallegos v. Atria Management Company, LLC*, 2018 WL 7500277, at \*3-5 (C.D. Cal. Feb. 22, 2018) (granting motion for judgment on the pleadings on similar claim).[5]

3. Blended paycheck claim. The class of all current and former employees who received a blended paycheck remains intact. As discussed with the parties, the process for adjudicating this claim will be discussed at the further case management conference on June 2, 2021. The parties

---

[4] As Hakeem recognizes in her opposition to Transdev's motion for summary judgment, her drug test-related claims include the claims for (i) failure to pay minimum wages, (ii) failure to provide accurate wage statements, (iii) failure to timely pay final wages, and (iv) unfair competition.
[5] Hakeem's request for judicial notice is granted.

should file a joint CMS one week prior with their positions on this issue.

      **IT IS SO ORDERED.**

Dated: April 27, 2021

                                                    VINCE CHHABRIA
                                                    United States District Judge