JOSEPH LAVI State Bar No.: 209776
jlavi@lelawfirm.com
VINCENT C. GRANBERRY State Bar No.: 276483
vgranberry@lelawfirm.com
POOJA V. PATEL State Bar No.: 317891
ppatel@lelawfirm.com
LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Tel: (310) 432-0000  Fax: (310) 432-0001

SAHAG MAJARIAN II State Bar No.: 146621
sahagii@aol.com
LAW OFFICES OF SAHAG MAJARIAN II
18250 Ventura Boulevard
Tarzana, California 91356
Telephone: (818) 609-0807
Facsimile: (818) 609-0892

KARLA GILBRIDE State Bar No.: 264118
kgilbride@publicjustice.net
**PUBLIC JUSTICE**
1620 L ST. NW, Suite 630
Washington, DC 20036
Tel.: (202) 797-8600

Attorneys for Plaintiff CHAUENGA M. HAKEEM
on behalf of herself and others similarly situated.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAUENGA M. HAKEEM on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>TRANSDEV SERVICES, INC.; TRANSDEV NORTH AMERICA, INC.; TRANSDEV; TRANSDEV, INC.; and DOES 1-100,<br><br>        Defendants. | Case No.: 3:19-cv-02161-VC<br><br>**NOTICE OF MOTION AND FIRST MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT INCLUDING PRELIMINARY APPROVAL OF ATTORNEYS FEES AND COSTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date**:     November 18, 2021<br>**Time**:     2:00 p.m.<br>**Courtroom**:  4<br><br>Before Hon. Vince Chhabria, United States District Judge |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Plaintiff Chauenga M Hakeem ("Plaintiff") hereby gives Notice that on Thursday, November 18, 2021 at 2:00 p.m., in Courtroom 4 of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff will move for the first time, and hereby does move the Court to enter the concurrently filed [Proposed] Order seeking the following:

(1) Granting preliminary approval of the proposed class action settlement, including the amount of the settlement; the amount and methodology pertaining to distributions to the class; the procedure for giving notice to class members; the procedure for allowing class members to opt out of the settlement; and the amounts allocated to incentive payments, attorney fees and costs, and administrative costs;

(2) Provisionally certifying the proposed Class for settlement purposes only;

(3) Approving the form and content of the class notice and directing the distribution of the class notice;

(4) Appointing Joseph Lavi, Vincent Granberry, and Pooja V. Patel from Lavi & Ebrahimian, LLP; Sahag Majarian II from the Law Offices of Sahag Majarian II, and Karla Gilbride of Public Justice as Class Counsel and named Plaintiff Chauenga M Hakeem as Class Representative;

(5) Appointing Simpluris, Inc. as settlement administrator; and

(6) Setting a Final Approval Hearing and hearing on Class Counsel's Attorney Fees and Cost award and Class Representative's Enhancement Payment for a date on or after March 31, 2022[1] or as soon thereafter as is acceptable and convenient to the Court.

As part of Plaintiff's motion, Plaintiff specifically seeks preliminary approval of the requested

---

[1] An March 31, 2022 hearing date or later accommodates the following: (1) "10 calendars days" (i.e., from preliminary approval for Defendants to provide putative class information to the Settlement Administrator (Granberry Decl. Ex. 1, V.42); (2) 10 business days for the Settlement Administrator to mail notice of settlement to the putative class (*id.*, Ex. 1, VI.47.); 60 calendar days from mailing for putative class members to submit objections/requests for exclusion (*id.,* Ex. 1, § I.12); (3) 35 days' notice for the motion for final approval of class action settlement (N.D. Cal. Civ. R. 7-2(a)).

1  Attorney Fees and Costs pursuant to Federal Rules of Civil Procedure Rule 23(h) and 54(d)(2) to

2  provide the Class Members notice of the basis of Plaintiff's request for attorneys' fees and costs.

3  *Mercury Interactive Corp. Sec. Litig. V. Mercury Interactive Corp.,* 618 F.3d 988, 993-995 (9th Cir.

4  2010).

5    Plaintiff's motion is based on this Notice, the stipulation for settlement, memorandum of

6  points and authorities; and Declarations of Vincent C. Granberry, Sahag Majarian II, and Karla

7  Gilbride concurrently filed herewith; all other pleadings and papers on file in this action; and any

8  other argument or other matter that may be considered by the Court.

9

10  Dated: October 21, 2021      Respectfully submitted,
            **LAVI & EBRAHIMIAN, LLP**

11              **LAW OFFICES OF SAHAG MAJARIAN II**
            **PUBLIC JUSTICE**

12

13

14           By: */s/ Vincent C. Granberry*

15              Joseph Lavi, Esq.
            Vincent C. Granberry, Esq.

16              Pooja Patel, Esq.
            Sahag Majarian II, Esq.

17              Karla Gilbride, Esq.
            Attorneys for PLAINTIFF

18              CHAUENGA M HAKEEM and Other Class
            Members

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

       A.   The Parties and Relevant Procedural History ........................................... 2

       B.   The Mediation, Exchange of Formal Discovery and Directly Relevant Informal
            Discovery, and Legal Analysis By Parties' Counsel ................................. 3

       C.   Overview of the Proposed Settlement ...................................................... 4

            1. Proposed Form of Notice to the Class .............................................. 6

            2. Simpluris, Inc. as Settlement Administrator .................................... 7

III.   THE     SETTLEMENT     MERITS     PRELIMINARY     APPROVAL     AND
       CONDITIONAL CLASS CERTIFICATION ..................................................... 7

       A.   Plaintiff's Claims Merit Class Action Treatment .................................... 9

            1. Numerosity ..................................................................................... 9

            2. Commonality ................................................................................ 10

            3. Typicality ..................................................................................... 10

            4. Adequate Representation ............................................................... 11

            5. Predominance of Common Questions ............................................ 12

            6. Superiority .................................................................................... 12

            7. Ascertainability ............................................................................ 14

       B.   The Settlement Merits Preliminary Approval ......................................... 14

            1. The   Settlement   Was   the   Product   of   Informed   Non-Collusive
               Negotiations ................................................................................. 14

            2. The Settlement Has No Obvious Deficiencies ................................ 15

            3. The Settlement Does Not Grant Preferential Treatment to Plaintiff or
               Segments of the Class ................................................................... 15

            4. The Settlement Falls Within the Range of Possible Approval ........ 16

            5. Attorneys' Fees at Below the Ninth Circuit's Benchmark of Twenty-Five

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Percent of the Common Fund Are Justified ........................................................ 18

6. Plaintiff's Fee Request is Reasonable Under the Lodestar Method.................... 19

a.   Class Counsel's total hours are reasonable ........................................... 20

C.   The Notice to the Class Is Sufficient............................................................. 21

IV.   CONCLUSION............................................................................................................... 22

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Amchem Products Inc. v. Woodward,*
    521 U.S. 591 (1997). .......................................................................... 13

*Anderson v. Nextel Retail Stores, LLC*,
    No. CV 07-4480, Dkt. 110 (C.D. Cal. June 30, 2010) ........................ 20

*Baldwin & Flynn v. Nat'l Safety Associates,*
    149 F.R.D. 598 (N.D. Cal. 1993) ..................................................... 9

*Barrera v. Gamestop Corp.*,
    No. CV 09-1399, Dkt. 56 (C.D. Cal. Nov. 29, 2010) ........................ 20

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ................................................ 15, 18

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975)....................................................... 9, 10, 12

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ...................................................................... 19

*Busby v. JRHBW Realty, Inc.*,
    513 F.3d 1314 (11th Cir. 2008)....................................................... 9

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
    917 F.2d 1171 (9th Cir. 1990).......................................................... 11

*Churchill Village, L.L.C. v. General Electric*,
    361 F.3d 566 (9th Cir. 2004)........................................................... 22

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992).......................................................... 8

*In re Computer Memories Sec. Litig.*,
    111 F.R.D. 675 (N.D. Cal. 1986) ..................................................... 10

*Dent v. ITC Serv. Grp., Inc.*,
    No. 12-cv-00009-JCM-VCF, 2013 U.S. Dist LEXIS 139363 (D. Nev. Sept. 27, 2013)............................................................................................ 16

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ....................................................................... 9

*Glass s v. UBS Fin. Servs., Inc.*,
    No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .......... 15, 19

*Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ............................................................................ 8, 9, 10, 11

*Hanon v. Dataproducts Corp.*,
     976 F.2d 497 (9th Cir. 1992) ........................................................................................ 11

*Harris v. Vector Mktg. Corp.*,
     No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, (N.D. Cal. Apr. 29, 2011) .............. 16

*Hendricks v. Starkist Co.*,
     No. 13-cv-00729-HSG, 2016 U.S. Dist. LEXIS 134872 (N.D. Cal. Sept. 29, 2016) .......... 15

*Hopson v. Hanesbrands Inc.*,
     No. CV08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ................ 20

*Lewis v. Gross*,
     663 F.Supp. 1164 (E.D. N.Y. 1986) ................................................................................ 9

*Leyva v. Medline Indus.*,
     716 F.3d 510 (9th Cir. 2013) ........................................................................................ 12

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
     244 F.3d 1152 (9th Cir. 2001) ...................................................................................... 11

*Lusby v. Gamestop Inc.*,
     297 F.R.D. 400 (N.D. Cal. Mar. 25, 2013) ...................................................................... 17

*Ma v. Covidian Holding, Inc.*,
     No. SACV 12-02161-DOC (RNBx), 2014 U.S. Dist. LEXIS 13296 (C.D. Cal. Jan.
     31, 2014) ...................................................................................................................... 17

*McKenzie v. Fed. Exp. Corp.*,
     2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) .................................................. 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
     221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 8

*New York Gaslight Club, Inc. v. Carey*,
     447 U.S. 54 (1980) ...................................................................................................... 20

*O'Sullivan v. AMN Servs., Inc.*,
     No. 12-cv-2125-JCS, ECF No. 92 (N.D. Cal. Feb. 7, 2014) .............................................. 17

*In re Omnivision Techs., Inc.*,
     559 F.Supp.2d 1036 (N.D. Cal. Dec. 6, 2007) ................................................................ 19

*Phillips Petroleum Co. v. Shutts*,
     472 U.S. 797 (1985) .................................................................................................... 13

*Ross v. U.S. Bank Nat. Ass'n*,
  No. C 07-02951 SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) ............... 16

*Rutti v. Lojack Corp.*,
  No. SACV 06-350 DOC (JCx), 2012 U.S. Dist. LEXIS 107677 (C.D. Cal. July 31,
  2012) ........................................................................................................................................ 16

*Satchell v. Fed. Exp. Corp.*,
  No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ..................... 14

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
  157 F. Supp. 2d 561, 570 n 12 (E.D. Pa. 2001) ................................................................... 8

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................................................... 15

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................... 8, 14

*Valentino v. Carter-Wallace*,
  97 F.3d 1227 (9th Cir. 1996) ............................................................................................... 13

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................................................................. 8

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ...................................................................................... 15

*Vietnam Veterans of Am. v. C.I.A.*,
  288 F.R.D. 192 (N.D. Cal. 2012 .......................................................................................... 14

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................................................................. 19

*Wang v. Chinese Daily News*,
  231 F.R.D. 602 (C.D. Cal. 2005) ........................................................................................... 9

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1188 (9th Cir. 2001) ............................................................................................. 12

**Statutes and Rules**

Fed. R. Civ. P.
  Rule 23(a)(4) ........................................................................................................................ 11
  Rule 23(b)(3) ............................................................................................................ 9, 12,13
  Rule 23(e) ............................................................................................................................... 7

**Other**

Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2012)
        § 10:571 ............................................................................................................ 9

Manual for Complex Litigation (Third) (1995)
        § 30.41 .............................................................................................................. 7

Manual for Complex Litigation (Fourth) (2004)
        §§ 21.632-21.635 .............................................................................................. 8

Newberg on Class Action (4th ed. 2002)
        § 11.22 ............................................................................................................... 8
        § 11.41 ............................................................................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Chauenga M. Hakeem ("Plaintiff") respectfully submits this memorandum in support of her motion for preliminary approval of the proposed no claims and non-reversion class action settlement with Defendant TRANSDEV, TRANSDEV SERVICES, INC., TRANSDEV NORTH AMERICA, INC. (hereinafter collectively referred to as "Defendants"). Plaintiff seeks entry of a proposed order granting preliminary approval of the class settlement which: (1) preliminarily approves the proposed settlement of the class action; (2) approves the form and method for providing notice and directs that notice be given to Class Members; (3) preliminarily certifies the class for settlement purposes only; and (4) schedules a final approval hearing date. (Granberry Dec. ¶38, Ex . 13.)

As consideration for this no claims made and non-reversionary settlement, Defendant shall pay $400,000 (the "Maximum Payment") to fund a settlement to be distributed to current employees and former employees. (Granberry Decl. Ex. 1, §§ I.13 & IV.35.) The Maximum Payment is inclusive of payments to those Class Members who do not exclude themselves, the approved attorney fees and costs, an approved Enhancement Payment to Plaintiff for her service as class representative, and the Settlement Administration Costs. (*Id.*)

The Net Settlement Amount is the portion of the Maximum Payment remaining after deductions of the Court-approved Attorneys' Fees of up to $80,000 in fees and up to $15,000 in costs requested by Class Counsel, the Court-approved Settlement Administration Costs not to exceed $22,000, and the Court-approved class representative enhancement of no more than $2,500. (Granberry Dec. Ex. 1, § IV.35.) If all requested amounts are approved, the amount to be distributed to the Class Members is estimated to be $280,500. The distribution to Class Members will be paid to each Class Member as a proportional share based on the number of pay periods worked by each Class Member during the Class Period where the Class Member received a raise, potentially resulting in a blended pay rate during that pay period ("Compensable Pay Raises") in relation to the number of Compensable Pay Raises experienced by all Class Members during the Class Period.

///

Defendants estimate there are 2,888 Class Members. Accordingly, Plaintiff estimates that class members will receive an average payment of $97.13 ($280,500 ÷ 2,888 = $97.13). As set forth below, Plaintiff believes this is a fair result for the Class Members. (Granberry Dec., ¶ 19.)

## II.    BACKGROUND

### A.    The Parties and Relevant Procedural History

Defendants operate a private sector transportation company. (*https://transdevna.com/.*) Plaintiff worked for Defendants as a bus driver from approximately January 22, 2018 through September 30, 2018. Defendants estimate there were 2,888 Class Members during the class period. (Granberry Dec., ¶ 3.)

On March 1, 2019, Plaintiff filed this class action in the Alameda County Superior Court alleging: Defendants failed to pay wages for all hours of work at the minimum wage rate, failed to properly calculate overtime paid to employees for overtime hours, failed to provide rest periods, failed to pay all vested vacation owed to employees after separation of employment, failed to provide complete and accurate wage statements in violation of Labor Code section 226, and failed to timely pay final wages to employees after separation of employment. (Granberry Dec., ¶ 4.)

On or about April 22, 2019, Defendants removed the matter to the U.S. District Court for the Northern District of California. Defendants denied the allegations and contended that employees were properly and timely compensated all wages and provided accurate wage statements. (Granberry Dec., ¶ 5.)

On June 26, 2020, after full briefing, the Court granted certification of a proposed class of all current and former employees who took a mandatory pre-employment drug test during the class period and all current and former employees who received a "blended" paycheck during the class period. (Dkt. No. 34.)

On April 27, 2021, the Court decertified the certified class with respect to the drug test claim. (Dkt. No. 71.)

Thereafter, the Parties filed cross motions for summary judgment on the remaining blended paycheck claim. (See Dkt. No. 80-82.) The Court entered it's tentative views of the cross motions

for summary judgment. (Dkt. No. 83.)

On June 27, 2021, the Parties advised the Court that they have reached a conditional settlement of the action. (Dkt. 85.)

### B. The Mediation, Exchange of Formal Discovery and Directly Relevant Informal Discovery, and Legal Analysis By Parties' Counsel

Plaintiff served Defendants with interrogatories and requests for production of documents resulting in approximately 1000 pages of documents produced, including, but not limited to Plaintiff's documents and data and Defendants' policies and handbooks. Defendants served Plaintiff with interrogatories and requests for production of documents. Defendants took Plaintiff's deposition. Plaintiff took the deposition of Defendants' person most qualified. The Parties agreed to informally exchange additional class information and data and policy information and privately mediate the matter with respected employment litigation and class action mediator Peter Rukin, Esq. Prior to the mediation, Defendants provided additional data like, inter alia, number of class members (current and former), average rate of pay, and the number of initial drug tests and number of hours per initial drug test. (Granberry Decl., ¶ 10.)

On February 17, 2020, the Parties engaged in mediation with Peter Rukin. The parties unfortunately did not reach a resolution at mediation and the Parties continued litigation as described above. (Granberry Decl., ¶ 11.)

After engaging in significant additional formal discovery and litigation, the Parties reached a settlement through arm's length negotiations. Defendants provided a declaration regarding the number of class members, the number of wage statements with violations, and when Defendants ceased engaging in the violative practice. (Granberry Decl., ¶ 12 & 50; Ex. 13 [Declaration of Feddor].)

Class Counsel represent that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the Class Members' claims against Defendants, including research of the applicable law and the potential defenses and review of relevant documents and data. (Granberry Dec., ¶ 13.)

Plaintiff and Class Counsel concluded, after taking into account the sharply disputed factual

1    and legal issues involved in this action, the risks attending further prosecution, and the benefits to

2    be received pursuant to the compromise and settlement of the action as set forth in the agreement

3    attached to the Declaration of Vincent Granberry as Exhibit 1, that settlement on the terms set forth

4    herein is in the best interest of the representative Plaintiff and the Class Members and is fair and

5    reasonable. (Granberry Dec., ¶ 14.)

6         As set forth in the Settlement Agreement at paragraphs 26 through 29, Defendants have

7    concluded that there are benefits associated with settling this action. Defendants deny that Plaintiff

8    would be able to establish damages for the wage statement claim. After taking into account the

9    sharply disputed factual and legal issues involved in the action, the expense and burden of

10   protracted litigation, and the desire to put the controversy to rest, Defendants believe that settlement

11   on the terms set forth in this agreement is in its best interests and is fair and reasonable.

12        **C.      Overview of the Proposed Settlement**

13        Subject to Court approval, the Parties have agreed to settle the lawsuit based on the terms

14   and conditions set forth in the settlement agreement, a copy of which is attached to the Declaration

15   of Vincent Granberry as Exhibit "1".

16        A summary of the key terms of the Settlement is as follows:

17   1. <u>Class Definition</u>: For purposes of the settlement, "Class Members" is defined as all
        current and former individuals who worked for Defendants in a non-exempt capacity as
18      a Bus Operator/Driver, in California at any time between March 1, 2018, and June 26,
        2020, who received wage statements with a blended overtime rate of pay; or wage
19      statements that did not list all applicable hourly rates in effect during the pay period and
        the corresponding number of hours worked at each hourly rate when they worked at
20      multiple rates of pay. (Granberry Dec. Ex. 1, § I.4.)

21   2. <u>Maximum Payment</u>: The maximum settlement payment by Defendants ("Maximum
22      Payment") is $400,000. This is a non-claims made and non-reversionary settlement. (*Id.*
        Ex. 1, § I.11 & I.12.)

23   3. <u>Class Counsel's Fees and Costs</u>: Class Counsel will request a payment of no more than
24      $80,000 for fees and up to $15,000 in costs. (*Id.* Ex. 1, IV.35.)

25   4. <u>Enhancement Payment</u>: Plaintiff and Class Counsel will request an enhancement
        payment in the amount of $2,500 for Plaintiff as payment for her time, effort,
26      assumption of risk in pursuing the litigation, and signing of a general release compared
        to the other class members. (*Id.* Ex. 1, § IV.38.)

27   5. <u>Settlement Administration Costs</u>: The parties have agreed to retain Simpluris, Inc. as the
28      "Settlement Administrator" and Plaintiff will request Settlement Administration Costs

not to exceed the amount of $22,000. (*Id.* Ex. 1, §§ I.8.  IV.37.)

6.  <u>Net Settlement Amount</u>: After deducting approved attorneys' fees and costs, an approved Enhancement Payment, and approved Settlement Administration Costs; the remaining funds or "Net Settlement Amount" is to be distributed to all Class Members who do not opt out. (*Id.* Ex. 1, § I.13 & IV. 34.) If all requested costs and fees are requested and approved, the Distributable Amount to pay Class Members and their taxes is estimated to be $280,500:

| | |
|---|---:|
| Maximum Payment | $400,000 |
| (Attorneys' Fees) | ($80,000) |
| (Attorneys' Costs) | ($15,000) |
| (Enhancement Payment) | ($2,500) |
| (Settlement Administration Costs) | ($22,000) |
| Distributable Amount | $280,500 |

7.  <u>Calculation of Individual Settlement Payment</u>: The Net Settlement Amount will be paid to all Class Members who do not exclude themselves pro rata based on the number of pay raises each Class Member experienced for Defendants during the Class Period potentially resulting in a blended pay rate (i.e., "Compensable Pay Raises") compared to the total Compensable Pay Raises experienced by all Class Members based on Defendants' records. (Granberry Decl. Ex. 1, § IV.39.a.) The Settlement Administrator will divide the Net Settlement Amount by the total number of Compensable Pay Raises worked by all Eligible Class Members during the Class Period, which will yield the "Penalty Value."  A Class Member's Individual Settlement Amount will be determined by multiplying the Penalty Value by the total number of Compensable Pay Raises experienced during the Class Period for each Eligible Class Member. (*Id.*) Payment to each Eligible Class Member shall be allocated as One Hundred Percent (100%) penalties reportable on IRS Form 1099. (*Id.,* Ex. 1, § IV.40.b.1)

8.  <u>No Reversion Of Uncashed Funds</u>: The expiration date of the Eligible Class Members' settlement checks will be one hundred and eighty (180) calendar days from the date the settlement checks are mailed.  The Settlement Administrator will mail a reminder letter regarding the check cashing deadline to all Eligible Class Members who have not cashed their settlement checks within ninety (90) calendar days of the date of mailing the Individual Settlement Amount checks.  To the extent there are any payments made to Eligible Class Members that remain uncashed one hundred and eighty (180) days after mailing, those funds will be delivered to the California Unclaimed Property Fund administered by the California State Controller's Office in the name of the authorized Eligible Class Member. (*Id.*, Dec. Ex. 1, § IV.40.g.)

9.  <u>Release of Claims Based on Certified Class</u>: The class release provides that upon the Settlement Effective Date and full funding of the Maximum Payment by Defendants, Class Members who do not exclude themselves (i.e., Eligible Class Members) from the settlement release all "Released Claims" from March 1, 2018 up to and including June 26, 2020 defined as follows:

"Released Claims" means any and all claims under Labor Code § 226 for improper wage statements during the Class Period.

(*Id.* Ex. 1, § IX.60.) In addition, Defendants required Plaintiff to enter into a broader release of all claims she has against Defendants including a California Civil Code 1542

general release. (*Id.* Ex. 1, § IX.61-63.)

## 1.   Proposed Form Of Notice To The Class

Notice of Settlement: Within ten (10) calendar days of the Court granting preliminary approval, Defendants will provide the Class Member List to the Settlement Administrator. (*Id.* Ex. 1, § V.42.) Within ten (10) business days after receiving the class list and class data from Defendants, the Settlement Administrator will mail the Notice and Exclusion Form ("Notice Packet") to all Class Members in English via regular First-Class U.S. Mail, using the most current, known mailing addresses identified in the Class Member List.  (*Id.* Ex. 1, § V.47.) Before mailing the Notice Packet, the Settlement Administrator shall update the contact information for each Class Member on the Class Member List to the most recent address using the United States Postal Service National Change of Address list. (*Id.* Ex. 1, § V.46.) If any Notice Packets are returned with a forwarding address, the Settlement Administrator will re-mail the documents to the Class Member at the forwarding address. (Granberry Decl. Ex. 1, § V.47.) If any Notice Packets are returned as undeliverable without a forwarding address, the Settlement Administrator will seek an updated address using a skip trace and send the Notice Packet to any updated address within seven (7) calendar days. (*Id.* Ex. 1, § V.47.)

The proposed Notice Packet is intended to effectively reach the Class based on their contact information provided to Defendants during their employment and following appropriate updating of that information through review of the United States Postal Service National Change of Address List for all Class Members to determine the most up to date addresses. The proposed Notice Packet will be sent in plain language in English to explain the class settlement process and will provide the Class Members with information about the settlement including: the maximum amount of settlement; the maximum amount of requested attorneys' fees and costs; the maximum amount of requested enhancement award; the amount to pay administration costs; the claims that will be released if the employee does not opt out; how the employee may opt out; how the employee may object; how the employee may participate; and the date and time of the Final Approval Hearing. (*Id.* Ex. 1 Ex. A.)

///

---

MEMORANDUM OF POINTS AND AUTHORITIES; Case No.: 3:19-cv-02161-VC
6

1

       <u>Request for Exclusions</u>: Any Class Member, who wishes to be excluded from the settlement,

2

must submit a timely and valid Exclusion Form to the Settlement Administrator with a postmark or

3

fax stamp if faxed no later than 60 days after the Settlement Administrator first mails the class

4

notice ("Response Deadline"). (Granberry Dec. Ex. 1, §§ I.12 & VI.50.) The Exclusion Form is

5

attached to the Settlement Agreement as Exhibit B for the Court's approval. (*Id*., Ex 1., Exhibit B.)

6

       <u>Objections</u>: Any Class Member wishing to object to the approval of this settlement shall

7

submit to the Court on or before the Response Deadline. (*Id*., Ex. 1, § VII.55; Ex. A to Ex. 1,

8

Section  7.C.) Any written objection must be made by the Class Member, mailed to the Court, and

9

clearly identify the case name and number. (*Id.,* Ex. 1, § VII.55; Ex. A to Ex. 1, Section  7.C.)

10

### 2.  Simpluris, Inc. as Settlement Administrator

11

       Simpluris, Inc. is an experienced and qualified class action claims administrator who

12

provides class action administrative services. Simpluris is a provider of notice and settlement class

13

action administration services since 2007 and has been appointed as a third-party administrator by

14

all major courts in California and a number of United States District Courts.

15

### III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL AND CONDITIONAL

16

### CLASS CERTIFICATION

17

       A class action may not be dismissed, compromised, or settled without the approval of the

18

Court. Fed. R. Civ. P. 23(e). Federal Rules of Civil Procedure, Rule 23(e) sets forth a "two-step

19

process in which the Court first determines whether a proposed class action settlement deserves

20

preliminary approval and then, after notice is given to class members, whether final approval is

21

warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal.

22

2004) (citing Manual for Complex Litigation (Third) § 30.41 (1995). The settlement approval

23

procedure includes the following steps: (1) preliminary fairness review of the proposed Settlement;

24

(2) dissemination of mailed and/or published notice of the Settlement and formal fairness review to

25

all affected class members; and (3) a formal fairness hearing, or final settlement approval hearing,

26

at which class members may be heard and evidence and argument concerning the fairness,

27

adequacy, and reasonableness of the Settlement may be presented. Manual for Complex Litigation

28

1   (Fourth) §§ 21.632-21.635 (2004).

2       The primary concern of judicial supervision at this stage of the settlement process is to

3   ensure "(1) the proposed settlement appears to be the product of serious, informed, noncollusive

4   negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to

5   class representatives or segments of the class, and (4) falls within the range of possible approval."

6       *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting

7   *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F. Supp. 2d 561, 570 n 12 (E.D. Pa. 2001));

8   *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) ("*Hanlon*"); *see* 4 Alba

9   Conte & Herbert B. Newberg, *Newberg on Class Action* § 11.22 (4th ed. 2002).

10      The law favors settlement, particularly in class actions and other complex cases where

11  substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See*

12  4 *Newberg* § 11.41, at pp. 87-88 (and cases cited therein); *Class Plaintiffs v. City of Seattle,* 955

13  F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.

14  1976). These concerns apply in this action where the alleged practice affected thousands of

15  employees. To make this fairness determination, courts must give "proper deference to the private

16  consensual decision of the parties" since "the court's intrusion upon what is otherwise a private

17  consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

18  necessary to reach a reasoned judgment that the agreement is not the product of fraud or

19  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

20  whole, is fair, reasonable and adequate to all concerned." *See Hanlon,* 150 F.3d at 1027. Indeed,

21  because "a settlement is the offspring of compromise," the question upon preliminary approval "is

22  not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate

23  and free from collusion." *Id.* When examining settlements, a presumption of fairness exists where:

24  (1) settlement is reached through arm's-length bargaining; (2) investigation and discovery are

25  sufficient to allow counsel and court to act intelligently and (3) counsel is experienced in similar

26  litigation. 4 Newberg § 11.41.

27  ///

28  ///

## IV.   PLAINTIFF'S CLAIMS MERIT CLASS ACTION TREATMENT

Class certification under Rule 23 requires a plaintiff to demonstrate the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. The plaintiff must also establish that one of the bases for certification in Rule 23(b) is met. Here, the action was previously certified for litigation purposes under Rule 23(b)(3) which requires that Plaintiff show questions of law or fact common to class members predominate over questions affecting individual class members and that the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(3). Plaintiff need only make a "prima facie showing" of the requirements under Rule 23. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008); *see* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:571 (The Rutter Group 2012). In determining the propriety of class certification, a court may not delve into the underlying merits of the claims. The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974). Accordingly, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975). A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l Safety Associates,* 149 F.R.D. 598, 600 (N.D. Cal. 1993). Under these governing standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

Further, this Court entered an order certifying a class of current and former employees of Defendants who received a "blended" paycheck during the class period. (See Dkt. 25.) The Parties reached the Settlement described herein for the employees within the class certified by this Court.

### A.   Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." A court may consider "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News,* 231 F.R.D. 602, 606 (C.D. Cal. 2005). "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross,* 663 F.Supp. 1164, 1169 (E.D. N.Y. 1986); *In re Computer*

*Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986). Numerosity is satisfied here because the proposed settlement class includes 2,888 potential members and joinder of the estimated 2,888 individuals would be impracticable.

**B.   Commonality**

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement must be "construed permissively." *Hanlon*, 150 F.3d at 1019. Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie*, 524 F.2d at 902.

Here, all class members share several common legal questions:
1.   Whether Defendants violated Labor Code § 226(a) by failing to provide their employees with accurate wage statements during pay periods in which employees received a raise.

Any factual variations among class members, as to how much their raise was or why they received it, have no bearing on this common legal question. All class members share the common interest of determining whether they received accurate wage statements.

**C.   Typicality**

Rule 23(a)(3) requires the representative plaintiff have claims "typical of the claims . . . of the class." Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Hanlon*, 150 F.3d at 120. The named plaintiff need not be "identically situated" with all other class members. *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir. 1990). Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

///

Here, Plaintiff, like all other class members, was a non-exempt hourly employee, employed in California during the class period who was subject to the same policies and procedures in question in the pending action. Plaintiff received a raise during a pay period during the Class Period which resulted in receipt of inaccurate wage statements. All class members and Plaintiff seek the same relief. Class members seek relief under Labor Code §§ 226, *et seq*. This lawsuit is based on alleged conduct which is not unique to Plaintiff, but on a course of conduct that is common to all class members.

### D.    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff alleges that there are no conflicts of interest between Plaintiff and class members. Given the similarity of the claims asserted and remedies sought by class members in this case, it is hard to imagine how there could be any conflicts.

Nor are there any conflicts with Plaintiff's counsel. Plaintiff's counsel, who have substantial class action experience, can adequately represent the class. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

Plaintiff's counsel is experienced in employment wage and hour and class action matters. Lavi & Ebrahimian LLP is a well-regarded firm that handles exclusively employment matters (both individual and class). (Granberry Decl. ¶¶24-29.) Lavi & Ebrahimian, LLP, has been approved as class counsel in numerous actions. (Granberry Decl. ¶¶24-29.) Joseph Lavi has been selected as a Southern California Super Lawyer in the area of Plaintiff's employment litigation from 2011-2021. (*Id*.) Vincent C. Granberry has been selected as a Southern California Super Lawyer Rising Star in the area of Plaintiff's employment litigation from 2016-2021 and was named a Super Lawyers Rising Star Up-And-Coming 100 in employment law in 2018, 2020, and 2021 and is also experienced in handling employment, wage and hour and class action matters. (*Id*.) The Law Offices of Sahag Majarian II is also a well-regarded firm that has been named class counsel in numerous actions.

1  (Declaration of Sahag Majarian II ("Majarian Decl."), ¶ 4.)  Sahag Majarian has been practicing since

2  1990 and has been in private practice primarily representing consumers against insurance companies

3  and workers against their employers.  (Id., ¶ 3.)  Public Justice has substantial experience litigating

4  complex class cases, and Karla Gilbride, a senior attorney at Public Justice, has personally litigated

5  and settled class cases in federal and state courts throughout the country. Gilbride Decl. ¶¶2-8. In

6  short, Class Counsel are experienced and qualified to evaluate the class claims and to evaluate

7  settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses.

8        **E.**    **Predominance of Common Questions**

9        The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant

10  adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d

11  1152, 1162 (9th Cir. 2001). Central to predominance is "the notion that the adjudication of common

12  issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1188,

13  1189 (9th Cir. 2001).

14        Here, Plaintiff contends that whether Defendants had a policy or practice of issuing inaccurate

15  wage statements which included a blended rate of pay or wage statements that did not list all

16  applicable hourly rates in effect during the pay period and the corresponding number of hours worked

17  at each hourly rate when they worked at multiple rates of pay is the central issue that predominates

18  over any individual issues. Considerations of judicial economy obviously favor litigating this

19  common issue once in a class action instead of hundreds of times in separate lawsuits. "When

20  common questions present a significant aspect of the case and they can be resolved for all members

21  of the class in a single adjudication, there is clear justification for handling the dispute on a

22  representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the

23  need for determining differing amounts of damages suffered by different class members does not

24  preclude class certification. *Leyva v. Medline Indus.,* 716 F.3d 510, 513-514 (9th Cir. 2013); *Blackie,*

25  524 F.2d at 905.

26        **F.**    **Superiority**

27        To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must

28  compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable

alternative to a class action necessarily means that a class action satisfies the superiority requirement. *Culinary/Bartenders Trust Fund,* 244 F.3d at 1163; s*ee also Valentino v. Carter-Wallace,* 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists"). For example, in *Culinary/Bartender Trust Fund*, the Ninth Circuit found superiority was met where class members could recover, at most, $1,330 in damages. Similarly, this case involves multiple claims for relatively small sums" and a class action clearly serves as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Culinary/Bartenders Trust Fun,* 244 F.3d at 1163 (quoting *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985)).

Consideration of the factors listed in Rule 23(b)(3)--(A) interest of members of the class in individually controlling the prosecution/defense of separate actions; (B) extent and nature of litigation already commenced by or against members of the class; (C) desirability/ undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action—only bolster this conclusion. However, when a court reviews a class action settlement, the fourth factor does not apply. *Amchem Products Inc. v. Woodward,* 521 U.S. 591, 620 (1997). Here, Plaintiff asserts that the remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification.

First, class members have no particular interest in individually controlling the prosecution of separate actions. Any class member who wants to pursue a blended paycheck claim in an individual action and seek compensation in excess of their estimated settlement payment can opt-out of the Settlement.

Second, there will be no competing litigation regarding the statutory violations at issue as the Parties are unaware of any pending related actions.

Finally, it is desirable to concentrate the issues in this forum because the parties reside in California and the class is comprised of employees who worked for Defendants in California. The conclusion to Plaintiff is inescapable that a class action provides the most efficient mechanism for resolving all the claims of the class members in this case.

///

### G.     Ascertainability

While not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Vietnam Veterans of Am. v. C.I.A.,* 288 F.R.D. 192, 211 (N.D. Cal. 2012). A class definition is sufficient if it is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a class member. *Id.* at 211. Here, the class is ascertainable as it is limited to Defendants' non-exempt employees who worked as a Bus Operator/Driver in California during the Class Period and can be identified through Defendants' employment records which include the class members' names and last known contact information which will be used by the administrator to send notice to the class.

## V.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL

As noted above, when examining settlements, a presumption of fairness exists where: (1) settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and court to act intelligently and (3) counsel is experienced in similar litigation. 4 Newberg § 11.41.

### A.     The Settlement Was The Product Of Informed Non-Collusive Negotiations

As discussed above, the proposed settlement was the product of arm's length, non-collusive negotiations, following initial formal written discovery, significant motion practice (including Plaintiff's Motion for Class Certification, Defendant's decertification efforts, and multiple summary judgment motions), Plaintiff's deposition, the deposition of Defendant's person most qualified, and additional informal exchange of information. (Granberry Decl. ¶¶3-14; *see also Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").) Plaintiff was well-informed about the strengths and weaknesses of her case after the depositions of Plaintiff and Defendant's person most qualified, reviewing Defendant's written policies and relevant data,  and conducting a damages analysis based on data produced by Defendants. (Granberry Decl. ¶¶3-14.)

Plaintiff and the putative class have been represented by experienced counsel, who demanded the most advantageous terms for the class throughout the litigation. In addition to the

total settlement amount, counsel insisted that the settlement payment be non-reversionary (i.e.,

maximizing payments to class members and aligning the interests of all parties to a successful

settlement administration).

### B.      The Settlement Has No Obvious Deficiencies

The settlement will pay an average payment of approximately $97.13 ($280,500 ÷ 2,888 =

$97.13) per employee. Other than the named Plaintiff, the class members are releasing only their

claims for violations of Labor Code § 226 regarding inaccurate wage statements. *See Hendricks v.*

*Starkist Co.*, No. 13-cv-00729-HSG, 2016 U.S. Dist. LEXIS 134872, at *4, 8, 2016 WL 5462423

(N.D. Cal. Sept. 29, 2016) (approving class settlement and scope of the release was limited to "the

factual predicate in the operative complaint").

### C.      The Settlement Does Not Grant Preferential Treatment To Plaintiff Or Segments Of The Class

The Settlement will treat class members fairly according to the formula set forth above

which provides payment pro rata based on the number of pay periods each Class Member worked

for Defendants during the Class Period and received a raise that might have caused a blended pay

rate (i.e., "Compensable Pay Raises") compared to the total Compensable Pay Raises worked by all

Class Members. (Granberry Decl. Ex. 1, § IV.40.b.i.)

The class representative's modest Enhancement Payment of $2,500 is justified under the

case law and the facts of this case. *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)

(recognizing service awards to named plaintiffs in class actions are permissible and do not render a

settlement unfair or unreasonable); *Glass v. UBS Fin. Servs.*, Inc., No. C-06-4068 MMC, 2007 U.S.

Dist. LEXIS 8476, at *50-52 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each

named plaintiff); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015)

(awarding named plaintiff in wage and hour class action $10,000 as a service award, and an

additional $5,000 award solely for the general release that the named plaintiff executed as part of

the settlement agreement); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal.

1995) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following

relevant factors to assess the appropriateness of a Class Representative's enhancement: 1) the risk to

the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. *Id*. at 299. These factors support the need for service payments to the class representative.

Plaintiff experienced risk to her reputation, future job prospects, and likely an employment reference as a result of bringing this case and placing herself in the public record as someone willing to sue her employer when she believes her rights are violated. (Hakeem Decl. ¶5; *see also Rutti v. Lojack Corp.*, No. SACV 06-350 DOC (JCx), 2012 U.S. Dist. LEXIS 107677, at *14-15 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer"); *Ross v. U.S. Bank Nat. Ass'n*, No. C 07-02951 SI, 2010 U.S. Dist. LEXIS 107857, at *6-7 (N.D. Cal. Sept. 29, 2010) (service awards based on "willingness to serve as representatives despite the potential stigma that might attach to them in the banking industry from taking on those roles").) Plaintiff has also estimated she has spent approximately 50 hours on this case including, inter alia, searching for an attorney, communicating with her attorneys, responding to Defendants' request for production of documents, submitting to her deposition, and reviewing and signing the settlement. (Hakeem Decl. ¶4.) The personal benefit Plaintiff would receive if it was limited to her settlement payment as part of the class would not compensate her for the aforementioned personal costs and risks she has assumed in order to benefit the class. Finally, Plaintiff is executing a much broader waiver of claims than the other class members, i.e., a general release, which warrants additional compensation. (Granberry Decl. Ex. 1, IX.61-63; *see Dent v. ITC Serv. Grp., Inc.,* No. 12-cv-00009-JCM-VCF, 2013 U.S. Dist LEXIS 139363, at *11 (D. Nev. Sept. 27, 2013) (awarding service payment in part because wage-hour plaintiff signed a general release).)

### D.     The Settlement Falls Within the Range of Possible Approval

The primary inquiry at this stage is whether Plaintiffs' expected recovery absent settlement balances appropriately against the value of the settlement offer. *See Harris*, 2011 WL 1627973, at *9. Courts "preview the factors that ultimately inform final approval:" (1) the strength of the

plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the experience and views of counsel; (7) the presence of a government participant (not applicable here); and (8) the reaction of class members. *Id*

The Maximum Payment is fair compared to the estimated full relief for Plaintiff and the class members' claims when considering Defendants' defenses and the risks involved as set forth in more detail in Plaintiff's Counsel's declaration. (*See* Granberry Decl. ¶¶12-18.) As explained in further detail in Counsel's appended declaration, the estimated value of the claims, according to a comprehensive analysis, is arguably $592,100. (Granberry Decl. ¶¶ 17.) The $400,000 settlement is arguably 68% of the exposure in this case, a fair result when considering Defendants' defenses warranting this Court's approval. Compare this result to *Ma v. Covidian Holding, Inc.*, No. SACV 12-02161-DOC (RNBx), 2014 U.S. Dist. LEXIS 13296, at *12 (C.D. Cal. Jan. 31, 2014), in which a settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'" *Id.* at *5; *see also O'Sullivan v. AMN Servs., Inc.*, No. 12-cv-2125-JCS, ECF No. 92 (N.D. Cal. Feb. 7, 2014) (approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net average payment) where total exposure before penalties and interest was estimated at $108 million, for a recovery of less than 3% of full relief).

In comparison, settlements that have been disapproved are dramatically different from this one. For example, in *Lusby v. Gamestop Inc.*, 297 F.R.D. 400 (N.D. Cal. Mar. 25, 2013), the rejected settlement would have been $750,000 for 13,872 people – paying a *de minimis* $0.26/shift, after fees/costs, etc. were deducted.

With respect to the factors that will apply at the Final Approval stage:

*First*, as discussed above, the amount offered under the proposed settlement provides a fair average per person net recovery for a wage-and-hour class action, especially in light of the narrow scope of the claims at hand.

*Second*, Plaintiff believes her claims on the merits are strong, which is indicated by successfully certifying a class and obtaining a positive tentative view on cross summary judgment

1  motions. Plaintiff faces the risk of an unfavorable finding at trial however should the case have

2  progressed without settling.

3      *Third*, the complexity and the expense of a Class trial would be considerable and would

4  almost certainly result in appeals by one or both sides, including possible interlocutory appeals at

5  various stages of the proceedings.

6      *Fourth*, the risk of failing to maintain class status through trial is substantial.

7      *Fifth*, the Parties have engaged in formal and informal discovery, including exchanging all

8  information and documents necessary to assess the value of each Class member's claims, such as

9  information regarding Defendant's policies and class members time records and wage statements,

10  etc.

11     *Sixth*, the firms representing Plaintiff is experienced in wage and hour class actions, having

12  had wage and hour settlements approved repeatedly by federal and state courts in California. (*See*

13  Granberry Dec., ¶¶ 20-27; Majarian Dec., ¶3-5; Gilbride Dec., ¶ 2-8 (detailing counsel's

14  experience). In the view of undersigned counsel, this Settlement is in the best interests of the Class

15  in light of the risk and delay of a class action trial and appeal, as compared with the immediate and

16  substantial recovery in the Settlement.

17     *Seventh*, there is no governmental entity involved.

18     *Eighth*, the reaction of the class members to the settlement will be better gauged at the final

19  fairness hearing and the close of the opt out deadline.

20  ### E.     Attorneys' Fees at Below the Ninth Circuit's Benchmark of Twenty-Five

21  ###         Percent of the Common Fund Are Justified

22     Before final approval, Plaintiff's counsel intends to seek, and Defendants will not oppose,

23  final approval of a request for attorneys' fees of twenty percent (i.e., $80,000) of the $400,000

24  Settlement. Plaintiff requests preliminary approval of the presumptively reasonable twenty percent

25  amount. *See, e.g., Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 265 (N.D. Cal. Mar. 20,

26  2015) (25% is presumptively reasonable benchmark amount).

27     The United States Supreme Court "has recognized consistently that a litigant or a lawyer who

28  recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole."

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit's benchmark for presumptively reasonable fees in this context is twenty-five percent of the Maximum Payment, and courts that depart from the benchmark should indicate their reasons for doing so. *Glass v. USB Fin. Servs.,* No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *44-45 (N.D. Cal. Jan. 26, 2007).

Here, Plaintiff's Counsel's request for twenty percent of the common fund, which is less than the benchmark fee award of twenty-five percent, is justified by the fair result and the non-reversionary nature of the settlement. Courts consider not only the results achieved, but also the risk of litigation, the contingent nature of the fee and the financial burden carried by the Plaintiff. *See, e.g., In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. Dec. 6, 2007).

**F.      Plaintiff's Fee Request is Reasonable Under the Lodestar Method**

In a common fund settlement "[t]he lodestar method is merely a cross-check on the reasonableness of a percentage figure." (*Vizcaino v. Microsoft* Corp. (9th Cir. 2002) 290 F.3d 1043, 1050, n.5.) In this case, consideration of Class Counsel's lodestar as a cross-check to the percentage figure also strongly supports the reasonableness of the requested fee award. The base amount is then adjusted in light of various factors.

Here, Plaintiff's Counsel has collectively spent approximately 287.2 hours in the case thus far with a lodestar of approximately $163,872.50. (Granberry Dec., ¶¶30-36, Ex. 3; Majarian Decl., ¶ 10, Ex. B; Gilbride Dec., ¶ 10.) Plaintiff has collectively also incurred approximately $16,459.48 in costs which Plaintiff's Counsel will seek final approval. (Granberry Decl. ¶37, Ex. 12; Majarian Decl., ¶ 10, Ex. C.) Counsel's hourly rates are reasonable, Counsel's hours spent are reasonable in this action to compensate Plaintiff and her counsel for the contingent risk inherent in the litigation and for the delay in receiving fees.

The hourly rates of the attorneys over the litigation period—$650 for Vincent C. Granberry, $750 for partner Joseph Lavi, $425 for Joshua Webster, $425 for Pooja Patel, and $425 for Melissa A. Huether—are in line with rates approved for attorneys in this region with similar experience. (Granberry Decl. ¶¶28-36, Ex. 3-11 (printouts of California firms from 2014 NLJ Survey of Attorney Fees, 2008 NLJ Survey of Attorney Fees, and Laffey Matrix and Locality tables).) A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant

community. *Hopson v. Hanesbrands Inc.,* No. CV08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at 34-35 (N.D. Cal. Apr. 3, 2009). Class Counsel's skill and experience support their hourly rates. (Granberry Decl. ¶¶28-36 (describing experience in employment law and class actions with Mr. Granberry a senior associate out of law school in 2010 and in practice with Lavi & Ebrahimian, LLP since April 2014, Mr. Lavi a founding partner and out of law school and practicing since 2000, Pooja Patel practicing law for over 4 years since 2017 in California, Melissa A. Huether practicing law for over 4 years since 2017 in California); Majarian Decl., ¶ 3 (describing Mr. Majarian's experience since graduating law school in 1990); [Gilbride Decl. ¶¶3-5 (Karla Gilbride's experience graduating law school in 2007).) Other attorneys working in California courts charge comparable if not higher rates as indicated in the printouts of California firms' billing rates from the 2014 National Law Journal Survey showing partner rates up to $1,195 and associate rates up to $750. (Granberry Decl. Ex. 4 (printouts from 2014 National Law Journal Survey for California firms showing a high rate for partners of $1,195 and high for associates of $725); see Ex. 5 (2008 National Law Journal Survey showing 2008 fees of California partners with high of $980 and associate high of $570); *see*, *e.g., Barrera v. Gamestop Corp.*, No. CV 09-1399, Dkt. 56 (C.D. Cal. Nov. 29, 2010) [$700 an hour for partners]; and *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480, Dkt. 110 (C.D. Cal. June 30, 2010) ($655 to $750 an hour for partners).) Plaintiff's Counsel's rates are also in line with the Laffey Matrix which states a rate of $742 per hour for attorneys out of law school 11-19 years and $864 per hour for attorneys out of law school over 20 years. (Granberry Decl. Ex. 6 available at http://www.laffeymatrix.com/see.html.)

**1. Class Counsel's total hours are reasonable**

In determining a lodestar, reasonable hours include, in addition to time spent during litigation, the time spent before the action is filed, including time spent interviewing the clients, investigating the facts and the law, and preparing the initial pleadings. (See *New York Gaslight Club, Inc. v. Carey* 447 U.S. 54, 62 (1980).) Further, the fee award should include fees incurred to establish and defend the attorneys' fee claim.

Class Counsel collectively has spent approximately 287.2 hours on this case. (Granberry Decl. ¶¶30-36, Ex. 3; Majarian Decl., ¶ 10, Ex. B; Gilbride Decl., ¶ 10.) In summary form, counsel's many

tasks included the following: pre-filing investigation, legal research, and research of Defendants and their relationship; meeting and communicating with client regarding her responsibility in bringing the action, the facts of her case, her employment, her work environment, her documents and Defendants' policies and procedures; drafting pleadings and discovery; reviewing Plaintiff's file and determining liability and evaluating claim and defense strengths and weaknesses; legal research of case law and wage orders regarding applicable claims and defenses; meeting and conferring over formal discovery; meeting and conferring over informal discovery; drafting notices for litigation; drafting Plaintiff's motion for class certification, reviewing Defendants' opposition, and drafting Plaintiff's reply; opposing Defendants' first motion for summary judgment; briefing the Parties cross motions for summary judgment; evaluating Defendants' policies; determining case strategy; communicating with Defendants' Counsel; evaluating data and information provided in discovery; calculating damages; negotiating settlement and settlement documents; communicating with the administrator and responding to administrator's inquiries; preparing the motion for preliminary approval and supporting documents; meeting with client regarding approval of the settlement. (Granberry Decl. ¶31, Ex. 3; Majarian Decl., ¶ 10, Ex. B.) All of the tasks and work performed were reasonable and necessary to the prosecution of this case and justified, particularly in light of the result achieved.

### G.     The Notice to the Class Is Sufficient.

The proposed Notice Packet and proposed method of distribution are appropriate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The proposed form of notice will be sent via first-class mail to the last known mailing address of each class member and, prior to mailing the Notice Packet, an experienced Administrator will consult the United States Postal Service's National Change of Address Database to review and possibly update the class member's mailing address. (Granberry Decl. Ex. 1, § VI.46-47.) The Notice Packet (Granberry Decl. Ex. 1, at Ex. A & Ex. B) will provide the details of the case and the proposed settlement and the specific options available to class members, as described above. The Notice Packet will provide class members with information from which they can make an informed decision about whether to opt out, object, or take no further action and receive a payment from the proposed settlement. *Id.* Thus, the proposed Notice Packet is adequate.

1

## VI.   CONCLUSION

2          The proposed class action settlement is fair, adequate, and reasonable. It will result in fair

3   and immediate payment to Class Members; it is non-collusive; and it was achieved as the result of

4   informed, extensive, and arms' length negotiations conducted by counsel for respective parties who

5   are experienced in wage and hour class action litigation. For the foregoing reasons, the parties

6   respectfully request that the Court grant preliminary approval of the proposed Settlement, sign the

7   proposed Order, approve and authorize mailing of the proposed Class Notice, and set a date for a

8   final approval hearing.

9

10  Dated: October 21, 2021                          Respectfully submitted,
                                                     **LAVI & EBRAHIMIAN, LLP**
11                                                   **LAW OFFICES OF SAHAG MAJARIAN II**
                                                     **PUBLIC JUSTICE**
12

13                                                   By: _/s/ Vincent Granberry_
14                                                        Joseph Lavi, Esq.
                                                         Vincent Granberry, Esq.
15                                                       Pooja Patel, Esq.
                                                         Sahag Majarian II, Esq.
16                                                       Karla Gilbride, Esq.
                                                         Attorneys for PLAINTIFF
17                                                       CHAUENGA  HAKEEM  and  Other  Class
                                                         Members
18

19

20

21

22

23

24

25

26

27

28